**Opinion filed June 27, 2024**



In The

# Eleventh Court of Appeals

——————

## No. 11-24-00009-CV

——————

## IN THE INTEREST OF C.M. AND D.M., CHILDREN

═══════════════════════════════

**On Appeal from the 42nd District Court**
**Coleman County, Texas**
**Trial Court Cause No. CV22-01099**

═══════════════════════════════

### M E M O R A N D U M   O P I N I O N

This is an accelerated appeal from an order in which the trial court terminated the parental rights of the mother and the presumed father of C.M. and D.M.[1]  Only the mother, Appellant, has appealed.  On appeal, Appellant challenges the sufficiency of the evidence to support the trial court's findings that (1) she committed the alleged acts as grounds for termination of her parental rights, and (2) termination of her parental rights is in the children's best interest.  She also challenges the trial

---

[1]We use pseudonyms to protect the identities of children.  TEX. R. APP. P. 9.8(b)(2).

court's decision to permit an undisclosed witness to testify at the final hearing. We affirm the trial court's order of termination.

## I. *Termination Findings and Standards*

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2023). To terminate one's parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(V), and that termination is in the best interest of the child. *Id.* at § 161.001(b)(2). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." FAM. § 101.007 (West 2019).

In this case, the trial court found that clear and convincing evidence established that Appellant committed at least one of the acts listed in Section 161.001(b)(1)—specifically, that Appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Appellant to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of the children's removal from Appellant under Chapter 262 because of Appellant's abuse or neglect of the children. *See id.* § 161.001(b)(1)(D), (E), (O). The trial court further found, pursuant to Section 161.001(b)(2), that

2

termination of Appellant's parental rights was in the children's best interest. *See id.* § 161.001(b)(2).

In her first and second issues on appeal, Appellant challenges the trial court's findings under subsections (D) and (E) and its best-interest finding as being unsupported by legally or factually sufficient evidence.

In reviewing a legal sufficiency challenge, we must decide whether "a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.W.*, 645 S.W.3d 726, 741 (Tex. 2022). Cognizant of the required appellate deference to the factfinder, "we look at all the evidence in the light most favorable to the finding, assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* (internal quotation marks omitted). "However, we may not disregard 'undisputed facts that do not support the finding,'" and the factfinder is "the sole arbiter of the witnesses' credibility and demeanor." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (then quoting *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021)). As such, when considering the credibility of the evidence presented, we may not substitute our judgment for that of the factfinder. *J.F.-G.*, 627 S.W.3d at 316.

In assessing whether the evidence is factually sufficient, we weigh the disputed evidence that is contrary to the finding against all the evidence that favors the finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). We give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002); *In re L.C.C.*, 667 S.W.3d 510, 512 (Tex. App.—Eastland 2023, pet. denied).

With respect to the best interest of a child, no unique set of factors need be proved. *L.C.C.*, 667 S.W.3d at 513; *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). Further, the best interest determination does not restrict the proof to any specific factor or factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). However, courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

To support a best interest finding, the Department is not required to prove each *Holley* factor; in some circumstances, evidence of the presence of only one factor will suffice. *C.H.*, 89 S.W.3d at 27; *In re D.M.*, 452 S.W.3d 462, 473 (Tex. App.—San Antonio 2014, no pet.). Additionally, the same evidence that proves one or more statutory grounds for termination may also constitute sufficient, probative evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The absence of evidence of some *Holley* considerations does not preclude the factfinder from reasonably inferring or forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence indicates that the parent-child relationship and the parent's conduct has endangered the safety and

well-being of the child. *C.H.*, 89 S.W.3d at 27. This is so because the best interest analysis evaluates the best interest of the child, not the parent. *In re E.C.R.*, 638 S.W.3d 755, 767 (Tex. App.—Amarillo 2021, pet. denied) (citing *In re B.C.S.*, 479 S.W.3d 918, 927 (Tex. App.—El Paso 2015, no pet.)).

In this regard, the factfinder may measure a parent's future conduct by her past conduct and determine whether termination is in the child's best interest. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied); *In re D.S.*, 333 S.W.3d 379, 384 (Tex. App.—Amarillo 2011, no pet.). The factfinder may infer that a parent's past conduct that endangered the safety and well-being of the child may recur in the future if the child is returned to the possession of the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *May v. May*, 829 S.W.2d 373, 377 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied). Additionally, the factfinder may infer from a parent's past inability to meet the child's physical and emotional needs an inability or unwillingness by the parent to meet the child's physical and emotional needs in the future. *J.D.*, 436 S.W.3d at 118; *see also In re A.S.*, No. 11-16-00293-CV, 2017 WL 1275614, at *3 (Tex. App.—Eastland Mar. 31, 2017, no pet.) (mem. op.).

## II. *The Evidence Presented at Trial*

In 2017, the Department removed Appellant's one- and two-year-old children due to her methamphetamine use. Leading up to that removal, Appellant (1) admitted to smoking methamphetamine and marihuana, (2) had been arrested for drug possession, and (3) left her children with friends for several days at a time. Appellant executed an affidavit of voluntary relinquishment, and her parental rights to her two children were terminated in 2018.

C.M. and D.M. were born on March 25, 2020, and December 14, 2021, respectively. In June of 2022, the Department received information that Appellant

had resumed using methamphetamine. In the Department's attempt to work with Appellant, C.M. and D.M. were temporarily placed with her sister. The children were ultimately removed after Appellant continued to test positive for methamphetamine.

Approximately one month after the children's removal, Appellant and her 2INgage permanency case manager, Meagan Davis, created a Family Plan of Service. The trial court ordered Appellant to comply with each requirement set forth in the service plan during the pendency of the termination proceeding. As part of her service plan requirements, Appellant agreed to engage in counseling and a substance abuse assessment, provide proof of legal employment and stable housing, and refrain from drug use and associating with others who partake in criminal activity or illegal substance use. Appellant was also required to submit to random drug testing, permit 2INgage staff to conduct home visits, and attend scheduled visitations with her children.

Between July and December of 2022, Appellant tested positive for methamphetamine on six of the seven drug tests that were administered. Appellant also tested positive for methamphetamine on several occasions in 2023, including during the months leading up to the final hearing in December of 2023.

According to Appellant, she has struggled with drug use most of her life, is "an addict," and relapsed a month before the final hearing. However, she claimed that she could remain sober if she left Coleman County: "I can either move away and be clean . . . or be stuck here in this same town where I'm just going to keep relapsing." Appellant described her techniques for maintaining sobriety:

> "Usually if I keep myself locked inside my house . . . I'm perfectly fine as long as I don't answer the door[,] [a]nd . . . as long as I'm not going out and, like, hanging out with people."

6

She admitted: "I can say no a few times, but eventually I'm going to hit it if you keep giving it to me."

Appellant ceased communicating with Davis in April of 2023 and has not seen her children since that time. According to Appellant, she has a job cleaning houses, and she moved into a stable home a month prior to the final hearing. However, Appellant refused to allow 2INgage staff to inspect her home when they attempted a home visit.

The trial court terminated Appellant's parental rights under Section 161.001(b)(1)(D), (E), and (O), and found termination to be in the best interest of the children. This appeal followed.

III. <i>Analysis</i>

A. *Termination under Subsections (D) and (E) – Endangerment*

Appellant contends in her first issue that the evidence is legally and factually insufficient to prove grounds (D) and (E). Specifically, she argues that "[n]o actual harm occurred," and "there was no evidence that the children were around her or subject to her drug use at the time of removal."

Although only one statutory ground is necessary to support termination, appellate courts must address a parent's challenges to a trial court's findings under subsections (D) or (E), as they may have implications for the parent's rights to other children. *See* FAM. § 161.001(b)(1); *In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law considerations with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either ground). Thus, if we conclude that the evidence is legally and factually sufficient to uphold the trial court's finding as to either subsection (D) or (E), we need not address whether the evidence supports termination under the remaining subsections, including the

7

arguments raised by Appellant concerning subsection (O). *See* FAM. § 161.001(b)(1); TEX. R. APP. P. 47.1. And when the evidence pertaining to both subsections (D) and (E) is interrelated, as it is here, we may conduct a consolidated review of the trial court's endangerment findings. *See In re A.L.S.*, 660 S.W.3d 257, 263–64 (Tex. App.—San Antonio 2022, pet. denied); *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.).

The statutory endangerment grounds require clear and convincing proof that the parent has: "(D) knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]," or "(E) engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." FAM. § 161.001(b)(1)(D), (E); *In re S.M.R.*, 434 S.W.3d 576, 585 (Tex. 2014). "[E]ndangerment encompasses a larger array of conduct that 'expose[s a child] to loss or injury' or 'jeopardize[s]' the child." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The term "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment," but "does not require actual harm." *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *see R.R.A.*, 687 S.W.3d at 277 (citing *Boyd*, 727 S.W.2d at 533).

To terminate a parent's rights for endangerment under Subsections (D) or (E), the "parent's endangering conduct need not 'be directed at the child[ren, nor must] the child[ren] actually suffer[] injury.'" *R.R.A.*, 687 S.W.3d at 277 (quoting *Boyd*, 727 S.W.2d at 533); *In re C.E.*, 687 S.W.3d 304, 310 (Tex. 2024). "[T]ermination under (D) requires that the child[ren]'s environment is a source of endangerment, and the parent's conduct may create that dangerous environment." *C.E.*, 687 S.W.3d

at 310. Endangerment under subsection (E), in contrast, focuses on the parent's conduct, and whether the endangerment of the child[ren]'s well-being was the direct result of the parent's acts, omissions, or failures to act. *In re J.S.*, 687 S.W.3d 541, 550 (Tex. App.—Eastland 2024, no pet.). Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child[ren]'s physical or emotional well-being." *R.R.A.*, 687 S.W.3d at 277.

Appellant incorrectly asserts that our inquiry is limited to whether she was "fit to parent at the time of termination, alone." A parent's actions prior to and after the children's removal may show an endangering course of conduct. *See J.S.*, 687 S.W.3d at 550 ("The endangering conduct may include the parent's actions before the child's birth and may relate to the parent's actions while the parent had possession of other children."). "Even evidence of criminal conduct, convictions, and imprisonment prior to the birth of a child will support a finding that a parent engaged in a course of conduct that endangered the child's well-being." *In re A.J.M.*, 375 S.W.3d 599, 606 (Tex. App.—Fort Worth 2012, pet. denied); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use and offenses that occurred before the child's birth may be considered as part of a course of conduct that endangers a child).

Drug use and its effects on the parent's life and ability to parent may also demonstrate an endangering course of conduct. *J.O.A.*, 283 S.W.3d at 345; *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting."). "While illegal drug use alone may

9

not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the children can establish a substantial *risk* of harm." *R.R.A.*, 687 S.W.3d at 278. "A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.* (quoting *J.O.A.*, 283 S.W.3d at 345). Thus, under certain circumstances, such as the ones that are present in this case, "any drug activity may render the parent incapable of parenting." *J.S.*, 687 S.W.3d at 554 (citing *R.R.A.*, 687 S.W.3d at 278).

It is undisputed that Appellant has battled an ongoing drug addiction and that she used methamphetamine prior to and after the children were removed. She tested "mostly positive" on her drug screens and admitted to relapsing a month before the final hearing. "A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being." *J.S.*, 687 S.W.3d at 551 (internal quotation marks omitted).

Appellant testified: "My problem is drugs," and that maintaining sobriety required "lock[ing] [herself] in the house." She blamed her geographical location for her recurring drug use and became defensive with the Department's attorney during cross-examination: "I'm just going to keep relapsing because y'all say that I have to be here or close by for the kids instead of moving them with me."

In rationalizing her relapses, Appellant ignores the consequences of her lengthy history of drug abuse. Indeed, "methamphetamine addiction can wreak havoc not only on the addict but on the addict's family," and young children are particularly vulnerable to such an environment. *In re H.C.*, No. 02-23-00477-CV, 2024 WL 1561513, at *6 (Tex. App.—Fort Worth Apr. 11, 2024, no pet.) (mem.

10

op.). Prior to the births of C.M. and D.M., the Department removed two children from Appellant's care—to which she later voluntarily relinquished her rights—due to her methamphetamine use. *See C.H.*, 89 S.W.3d at 27–28 (past performance as a parent "could certainly have a bearing on [a parent's] fitness to provide for" her children, and courts should consider the parent's prior history of child neglect in its best-interest analysis). She was also arrested and placed on community supervision for drug possession in 2017 and was required to live in a halfway house in 2019 as a condition of her community supervision. Appellant's incessant drug use undoubtedly "exposes the children to the possibility that [she] may be impaired or imprisoned," just as it did with her two older children. *See J.S.*, 687 S.W.3d at 551.

As recently as June 22, 2023, police stopped a vehicle after seeing the driver and the passenger, Appellant, passing a glass pipe back and forth. The officer believed that Appellant was under the influence of narcotics and found drug paraphernalia after searching the vehicle. Because the driver claimed ownership of the vehicle, Appellant was not cited for possession of drug paraphernalia. Although Appellant avoided another criminal charge, her actions indicate that she has chosen to lead to "a life of uncertainty and instability" for her children. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

Appellant's voluntary, deliberate, and conscious acts constitute more than a single act of conduct. On this record, we conclude that there is legally and factually sufficient evidence to support the trial court's finding that Appellant engaged in a continuing course of conduct that endangered the physical or emotional well-being of her children. *See* FAM. § 161.001(b)(1)(E). Accordingly, we overrule Appellant's first issue.

B. *The Best Interest of the Children Determination*

In Appellant's second issue, she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the best interest of the children.

First, we reiterate that evidence of each *Holley* factor is not required to support a best interest finding. *In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re S.O.*, No. 05-22-01019-CV, 2023 WL 2237084, at *11 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.). Put differently, the absence of evidence on some of these factors does not preclude a best interest finding, "particularly if [the] undisputed evidence shows the parental relationship endangered the child[ren]'s safety." *In re N.T.*, 474 S.W.3d 465, 477 (Tex. App.—Dallas 2015, no pet.) (quoting *In re A.E.*, No. 05-14-01340-CV, 2015 WL 1184179, at *6 (Tex. App.—Dallas Mar. 16, 2015, pet. denied) (mem. op.). Indeed, "evidence relating to one single factor may be adequate in a particular situation to support a finding that termination is in the best interests of the child[ren]." *In re K.S.*, 420 S.W.3d 852, 855 (Tex. App.—Texarkana 2014, no pet.). "'[B]est interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (quoting *Holley*, 544 S.W.2d at 371–72).

The trial court, as the trier of fact, is the sole judge of the witnesses' credibility. *J.F.-G.*, 627 S.W.3d at 312. We are not at liberty to disturb the determinations of the trier of fact so long as those determinations are not unreasonable. *Id.* at 311–12; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). Giving due deference to the trial court, as we must, we hold that, based on the evidence in the record and the application of the *Holley* factors, the trial court could have reasonably formed a firm belief or conviction that termination of Appellant's

parental rights was in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72.

As we have said, in its best interest determination, a trial court, as the factfinder, may infer that a parent's past endangering conduct may recur if the children are returned to the parent. *See In re L.N.C.*, 573 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *J.D.*, 436 S.W.3d at 118; *see also In re T.B.*, No. 09-20-00172-CV, 2020 WL 6787523, at *8 (Tex. App.—Beaumont Nov. 19, 2020, no pet.) (mem. op.) ("factfinder may consider prior CPS history of neglect, drug use, or lack of care for the children"). Evidence that is relevant to Section 161.001(b)(1) termination grounds may also be relevant to the determination of the child[ren]'s best interest. *In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). And evidence that supports termination under the grounds listed in Section 161.001(b)(1) can be considered in the best-interest analysis. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266. Therefore, the trial court could properly consider Appellant's failure to comply with the conditions of her family service plan and her drug use in determining whether the termination of her parental rights was in the children's best interest. *See C.H.*, 89 S.W.3d at 28; *C.J.O.*, 325 S.W.3d at 266.

The record shows that the Department attempted to reunify Appellant with her children, but she failed to maintain consistent contact with her case manager and complete her required services. Despite Appellant's testimony that her "only issue" was her "relapsing," she did not complete her counseling, missed three substance abuse assessments, and has not visited with her children since April of 2023. She provided no proof of stable housing or employment and admitted to ongoing substance abuse. Appellant's failure to comply with her family service plan requirements supports the trial court's best-interest finding. *See E.C.R.*, 638 S.W.3d

at 769 ("A trial court is permitted to consider a parent's . . . failure to comply with a family plan of service in its best interest determination."); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex. App.—Fort Worth 2006, no pet.) ("A parent's drug use, inability to provide a stable home, and failure to comply with [her] family service plan support a finding that termination is in the best interest of the child.").

Between April and July of 2023, Appellant disengaged from communications, services, and the children themselves, thereby "posing a substantial risk to the children's emotional well-being." *R.R.A.*, 687 S.W.3d at 281. In fact, she did not inquire about the children during that time. And despite her insistence that "for the most part [she] do[es] stay clean," her own admissions and drug test results prove otherwise. This evidence permits the strong inference that Appellant knew the risks and consequences of her behavior but nevertheless continued to use methamphetamine. As such, the trial court could consider Appellant's lack of remorse and clear parental indifference in its best-interest determination. *See In re A.J.D.-J.*, 667 S.W.3d 813, 823 (Tex. App.—Houston [1st Dist.] 2023, no pet.) ("[S]ignificant evidence of parental indifference weighs heavily in favor of a factfinder's finding that termination is in a child's best interest.").

Moreover, the children are doing "[v]ery well" in their current placement. Davis testified that they refer to their foster mother as "mom." Appellant, by contrast, has no plans or intentions to provide for her children's physical and emotional needs—her strategy to maintain sobriety by locking herself in her home and not answering the door wholly fails to factor into the needs of her children. This uncontroverted evidence shows that Appellant was unwilling or unable to provide a safe and stable home for C.M. and D.M., which supports the trial court's best-interest finding. *See J.S.*, 687 S.W.3d at 553.

Appellant's persistent and unapologetic drug use while under Department supervision shows her clear disinterest in placing the welfare of her children before her own. *See, e.g., S.O.*, 2023 WL 2237084, at *12–13 ("Mother's drug use was not isolated but had been an ongoing problem in her life."); *see also N.T.*, 474 S.W.3d at 479 ("[R]ecent improvement alone is not sufficient to avoid termination of parental rights.") (quoting *In re K.D.C.*, No. 02-12-00092-CV, 2013 WL 5781474, at *16 (Tex. App.—Fort Worth Oct. 24, 2013, no pet.) (mem. op.)). Upon considering the record as it relates to Appellant's actions and inactions, the emotional and physical danger to the children now and in the future, the emotional and physical needs of the children now and in the future, Appellant's lack of parental abilities, Appellant's history with the Department, and her ongoing drug abuse, we hold that the evidence is legally and factually sufficient to support the trial court's finding that termination of Appellant's parental rights is in the best interest of the children. *See J.W.*, 645 S.W.3d at 741; *Holley*, 544 S.W.2d at 371–72. Accordingly, we overrule Appellant's second issue.

C. *Testimony of Undisclosed Witness*

Appellant argues in her third issue that the trial court erroneously allowed an undisclosed witness—the foster mother—to testify at the final hearing. *See* TEX. R. CIV. P. 194.4. In general,[2] parties are required to disclose the identity of potential trial witnesses at least thirty days before the commencement of trial. *See id.* Under Rule 193.6 of the Texas Rules of Civil Procedure, when a party fails to timely supplement a discovery response, the untimely disclosed evidence or witness may

---

[2]Effective September 1, 2023, the Texas Legislature enacted Rules 194a.1 through 194a.6 that apply to requests for disclosures "in [s]uits [g]overned by the Family Code," and specifically excepted such suits from Rules 194.1 through 194.6 in order to implement and codify the spirit of Chapter 301 of the Texas Family Code. *See* TEX. R. CIV. P. 194, cmt. 2023; *Id.* R. 194a; *see also* FAM. §§ 301.001–.108. Chapter 301, as added by the legislature, applies only to an action filed on or after September 1, 2023. Act of May 4, 2023, 88th Leg., R.S., ch. 844, § 2, 2023 Tex. Sess. Law Serv. Ch. 844 (codified at FAM. §§ 301.001–.108). This termination action was filed before September 1, 2023.

be excluded. Tex. R. Civ. P. 193.6. The trial court may nevertheless admit the testimony of an undisclosed witness if the party seeking to present the undisclosed witness establishes that: (1) good cause exists for failing to timely disclose the witness's identity; or (2) the failure to disclose will not unfairly surprise or unfairly prejudice the other parties. *Id.*

Here, the trial court permitted the attorney ad litem to present the foster mother as a witness without making a determination of either good cause, or a lack of unfair surprise or prejudice to Appellant. Assuming without deciding that the trial court erred by permitting the foster mother to testify, Appellant has failed to show that she was harmed by the admission of the foster mother's testimony.

An error warrants reversal when it either "probably caused the rendition of an improper judgment" or "prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1(a); *In re J.N.*, 670 S.W.3d 614, 619 (Tex. 2023). The reviewing court must evaluate the potential influence or impact of the error on the trial court's final judgment. *J.N.*, 670 S.W.3d at 619. In this case, we conclude that the trial court's admission of the foster mother's testimony neither caused the rendition of an improper judgment, nor prevented Appellant from presenting her case to this court.

We first observe that the trial court, in pronouncing its rulings, expressly relied on Appellant's history with the Department that began in 2017, and her ongoing drug abuse. The trial court advised Appellant that addiction is "a horrible problem . . . [b]ut at some point it's on you." It is clear from the record that the trial court's termination decision was based primarily on Appellant's actions, and how they affected her children's well-being, rather than solely, if at all, on the foster mother's testimony.

Finally, as set forth above, the trial court's findings and its termination of Appellant's parental rights are supported by clear and convincing evidence, even without the admission of the foster mother's testimony. In particular, evidence that the children were doing well and thriving in foster care was elicited through Davis. If evidence that is erroneously admitted is merely cumulative of other properly admitted evidence, then the error is harmless. *See State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 881 (Tex. 2008) ("The erroneous admission of testimony that is merely cumulative of properly admitted testimony is harmless error.") (quoting *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)). Consequently, to the extent that the admission of the foster mother's testimony was error, if any, its admission was harmless. *See* TEX. R. APP. P. 44.1(a). Accordingly, we overrule Appellant's third issue.

IV. *This Court's Ruling*

We affirm the order of the trial court.


W. STACY TROTTER

JUSTICE


June 27, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

17